IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WENDELL MATTHEWS,<br><br>            Plaintiff,<br><br>   vs.<br><br>MONTE MCNEIL, in his official and individual capacities; JOHN DOE, in his official and individual capacities; and CITY OF NORTH PLATTE, A Nebraska political subdivision,<br><br>            Defendants. | 7:16CV5005<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendants' Monte McNeil's and the City of North Platte's ("the City") motion for summary judgment, Filing No. 69. This is an action for violation of civil rights under 42 U.S.C. § 1983.

I.    FACTS

In his amended complaint, plaintiff Wendell Matthews alleges that North Platte Police Department Investigator Monte McNeil and his supervisor, Rich Thompson,[1] violated Matthews's Fourth Amendment right to be free from an unreasonable seizure and his Fourteenth Amendment right to substantive due process by conducting a reckless investigation of sexual assault allegations by a minor and wrongfully arresting him. He also alleges the defendants and other investigative, supervisory, and policymaking personnel conspired to deprive him of his constitutional rights. Further, he asserts that the City of North

---

[1] McNeil's supervisor is identified in the plaintiff's Amended Complaint as John Doe. Discovery shows that Investigator McNeil's supervisor is Lieutenant Rich Thompson and he should be substituted as party defendant in the docket. *See* Filing No. 74, Plaintiff's Brief at 4.

Platte is liable for failing to properly train and supervise its officers with respect to child sexual assault investigations.

The defendants argue that Investigator McNeil is entitled to qualified immunity because the record shows there has been no constitutional violation. It further argues that the City is entitled to summary judgment for the same reason.

The following facts are gleaned from the pleadings, the parties' briefs and the supporting evidence. *See* Filing No. 70, Defendant's Brief at 2-8; Filing No. 74, Plaintiff's Brief at 4-55; Filing No. 71, 75, and 80, Indices of Evidence. Defendant City of North Platte is a Nebraska political subdivision ("the City"). Defendant Monte McNeil has been an employee of the North Platte Police Department since 1995. For the last eight to ten years, Investigator McNeil has been the lead investigator for most cases involving sex crimes against minor victims. Lieutenant Richard Thompson has been Investigator McNeil's supervisor for the last seven or eight years. Filing No. 75-2, Deposition of Monte McNeil ("McNeil Dep.") at 25-26.

Bridge of Hope Child Advocacy Center ("Bridge of Hope") is a nonprofit organization that coordinates investigation of child abuse cases, provides intervention services, and brings professionals and agencies together to work as a multidisciplinary team. Investigator McNeil is one of five or six forensic interviewers that Bridge of Hope uses to conduct interviews. Investigator McNeil sat on Bridge of Hope's Board of Directors, a volunteer position, for several years. He is paid by the City.

In January 2012, Investigator McNeil was assigned to investigate a report by school personnel that that an eight-year old student (hereinafter, "S.S.") was hearing voices in her head and had been experiencing "pooping incidents." Filing No. 75-14, Incident Report

dated January 12, 2012. The juvenile was interviewed at Project Harmony, a child advocacy agency in Omaha, and vaguely alluded to fear of a male and secrets. *Id.* The interviewer noted the child had a history of lying, but stated she seemed honest in the interview. *Id.* at 4. The case was referred to law enforcement and Investigator McNeil was assigned to the case. *Id.* Investigator McNeil determined he did not have enough evidence to interview S.S. at Bridge of Hope and he did not do any further investigation as a result of the 2012 report. [Filing No. 75-2](), McNeil Dep. at 100-02. Later, in December 2013, when she was 10 years old, S.S. recounted sexual or sexualized incidents with a minor friend in 2012 to her psychologist, Dr. Luke McConnell. 75-40, Behavioral Medicine Associates' notes at 1.

On December 30, 2013, Investigator McNeil received a call from Dr. Luke McConnell, a therapist at Behavioral Medicine and Associates. [Filing No. 71-1](), McNeil Dep., Ex. 16, CM/ECF Page ID # 271. Dr. McConnell reported that S.S. had disclosed during a counselling session that she had been molested by Wendall Matthews. *Id.* at CM/ECF Page ID # 272. Investigator McNeil directed McConnell to call the child abuse hotline. *Id.* The Department of Health and Human Services Child Abuse/Neglect Intake Worksheet relayed the information conveyed by Dr. McConnell to Debbie Gill at Omaha-Project Harmony. [Filing No. 75-21](). The matter was referred to law enforcement with this stated reason:

> Intake Closure Status: Law Enforcement, Reason: 10-year-old female reported that when she was in the 3rd grade living in North Platte, her then mother's live in boyfriend digitally penetrated her and penetrated her with his penis both anally and vaginally five to six times. Last contact with him was two years ago.

[Filing No. 75-21](). The case was assigned to Investigator McNeil. [Filing No. 26](), Answer.

The following day Investigator McNeil received the intake report. [Filing No. 75-15](), Incident report at 2. He called the victim's mother to arrange for an interview of S.S. at

Bridge of Hope. *Id.* S.S. was interviewed at the Bridge of Hope on January 6, 2014, by Amber McNutt. *Id.*; *see* Filing No. 71-1, McNeil Dep. at 132-34; Filing No. 75-29, Transcript of Interview ("Tr."). Investigator McNeil testified he gave Bridge of Hope the intake report, but did not share any other details with McNutt to prepare her for the interview of S.S. Filing No. 71-1, McNeil Dep. at 137. Investigator McNeil watched the entire interview of S.S. from the monitor room. *Id.*, McNeil Dep. at 142-43. Investigator McNeil testified Ms. McNutt did not express any concerns about the reliability of S.S.'s story. *Id.* at 159. McNutt has been trained as a forensic interviewer. Filing No. 75-3, Deposition of Amber McNutt ("McNutt Dep.") at 17.

In the interview, S.S. gave a detailed and graphic account of abuse by Wendell Matthews two years earlier during evenings when he mother went to pool league. Filing No. 75-29, Tr. at 3-6, 27-29. Ms. McNutt asked S.S. why she had come to Bridge of Hope that day and S.S. stated "because someone sexually abused me." *Id.* at 3. She identified Wendell Matthews as the perpetrator without further prompting. *Id.* S.S. also made vague statements about sexual activities with several others: a girl her age, two little boys (at the direction of the girl), and three cousins. *Id.* at 20-25. She also mentioned a five-year-old and a nine-year old and reported that she had taken baths with at the home of an adult named Todd without her mother there; that Todd "got mad at me for locking the door," and unlocked the door with a key and let his son get in the bath with her. *Id.* at 24. S.S. also stated that other than Wendell Matthews, there were no other "grownups" who had abused her. *Id.* at 25. McNutt took a break in the interview to consult with Investigator McNeil, and Investigator McNeil did not request any follow-up. Filing No. 75-3, McNutt Dep. at 77.

Investigator McNeil noted the following background in his report on the December 30, 2013, incident:

> It should be noted that a case was generated in January of 2012 in which [S.S.] was reported to be having issues at School and the possibility of her being molested was questioned. [S.S.] was defecating in her pants at School during this time. [McNeil] had contacted [Lutheran Family Services] and spoke with [S.S.'s] Counselor, Sue Heubner. Sue was going to talk about good touch bad touch with [S.S.]. I later received a call in which Sue advised [S.S.] never disclosed anything. In October 2013, [S.S.] had disclosed she had a touching episode with a peer named [redacted]. [Redacted] had moved. [McNeil] learned the name as [redacted]. The family had since moved to Alabama. [McNeil] did call a cell number left with School Officials, but it was discontinued.

Filing No. 75-15, North Platte Police Prosecutor Report at 4.

A sexual abuse nurse examination ("SANE exam") on January 8, 2014, revealed anal "possible multiple healed trauma @ 8 o'clock to 6 o'clock" and also showed a septal hymen with possible thickening present." Filing No. 75-32, SANE examinations at 5, 8; Filing No. 71-1, McNeil Dep. at 192-93. A further exam on January 22, 2014, stated the same observation, noting "possible multiple healed trauma still present @ 6 o'clock to 8 o'clock." Filing No. 75-32, SANE examinations at 15. In his report, McNeil stated:

> It is believed the acts began in 2007 when [S.S.] was in second grade and 7 years of age. Behavior problems escalated when [S.S.] was attending third grade and she was eight years old. Wendell met Cristina and moved in with her and [S.S.] when [S.S.] was 1 to 2 years of age. They split up shortly before Christmas 2012. Wendall lived with S.S. between 2003 to 2012.

Filing No. 75-15 at 4.

Dr. McConnell's records are also in the record. Filing No. 75-40. Those records show that on December 17, 2013, S.S. shared a passage in her journal with Dr. McConnell about a sexual interaction when she was eight years old with a friend who was the same age. *Id.* She stated that the incident had been reported to Investigator McNeil and that the alleged

perpetrator had since moved to Alabama. *Id.* On December 30, 2013, Dr. McConnell's notes indicate that S.S. reported that when she was in in the third grade, Wendell Matthews, then her mother's boyfriend, had penetrated her both anally and vaginally five to six times. *Id.* at 4; Filing No. 75-2, McNeil Dep. at 130.

On February 12, 2014, Investigator McNeil went to Matthews's home, informed him of the allegations and asked Matthews to accompany Investigator McNeil to the station to talk about it. Filing No. 71-1, McNeil Dep. at 219. Matthews denied the allegations, Investigator McNeil transported Matthews to the County jail, and cited him for class 1B sexual assault of a child. Filing No. 26, Answer at 12. Investigator McNeil testified that he arrested Matthews based on S.S.'s statements. Filing No. 71-1, McNeil Dep. at 203. Investigator McNeil read Matthews his Miranda rights. *Id.*, McNeil Dep. at 220. After Matthews was in custody, McNeil presented the case to the County Attorney. *Id.*, McNeil Dep. at 228. Investigator McNeil concedes that he arrested McNeil before he submitted the report of his investigation to the County Attorney. Filing No. 75-2, McNeil Dep. at 205-206. McNeil testified that he considers his investigation complete after he submits the case to the prosecutor, but he may need to do further work based on a prosecutor's request, or if he becomes aware of new information. *Id.* at 36-37.

The following day, on February 13, 2014, McNeil submitted an affidavit of probable cause for the arrest Matthews to a judge. Filing No. 75-20, Law Enforcement Officers Affidavit of Probable Cause. McNeil testified that the affidavit summarized what he knew. Filing No. 71-1, McNeil Dep. at 206-207. In the affidavit, McNeil states:

> On 12/31/13 a Child Abuse/Neglect Intake was received in regards to 10 year old S.S. S.S. had disclosed being sexually molested by her mother's boyfriend 50 year old Wendell Matthews.

6

> On 01/06/14 S.S. was transported to the Bridge of Hope CAC for a Forensic Interview. During the interview S.S. disclosed being humped by Wendell. When asked what humping was S.S. advised Wendell put his dick in her special area. S.S. also disclosed that Wendell put his fingers up her butt. The acts mostly happened on the couch in the living room. The incidents took place at the residence of 619 West 6th. S.S. said her mother was always gone during the acts and mostly at pool league when it would take place. S.S. said it happened a lot of times.
> The acts took place while S.S. was 7 and 8 years old and in 2nd and 3rd grade. S.S. went on to disclose about bleeding after the humping episodes and having to gather her Mom's pads to place in her underwear. Medical exams were conducted of S.S.'s anus and vagina which showed signs of healed trauma.

Filing No. 71-1, McNeil Dep., Dep. Ex. 20, Affidavit. He testified he did not submit his affidavit to anyone for review. *Id.*, McNeil Dep. at 207. He also referred to the 2012 report, which was for child abuse/neglect concerning S.S. as an eight-year old, in the 2014 report to the prosecutor, but not in the affidavit. *Id.*, McNeil Dep. at 91, 197. Investigator McNeil also testified that he had seen other reports concerning S.S, dated in 2013, before he submitted the case to the prosecutor. Filing No. 71-1, McNeil Dep. at 105; *see also* Filing No. 75-17, Incident # 13-014016; Filing No. 75-18, Incident # 13-008390 (both involving reports of "student out of control" from school); Filing No. 75-19, Incident # 13-017015 (noting that a doctor appointment had been made to screen for mental problems).

On February 2, 2015, the Lincoln County District Court granted the Lincoln County Attorney's motion to dismiss the case against Matthews. Filing No. 26, Answer. Investigator McNeil testified he did not have any communication with the County Attorney before the case was dismissed other than deposition shortly before the case was scheduled for trial. Filing No. 71-1, McNeil Dep. at 233. He continues to believe that Matthews should have been prosecuted and tried. *Id.* at 205.

The plaintiff submitted evidence that S.S. was referred by a school counselor to Lutheran Family Services in 2011 for Comprehensive Biopsychosocial Assessment and Individual Diagnostic Interview after S.S. had told the school counselor far-fetched and false stories "about her home life, including that she is often required to sleep outdoors, that she is required to take care of the other children in the home and that she has been removed from the home and placed elsewhere." [Filing No. 75-38](). She was diagnosed with "generalized anxiety disorder" and the report noted that "insight is absent" and "judgment is poor." *Id.* A diagnostic interview update was completed in a face-to-face interview with S.S. and her mother on September 12, 2012. *Id.* In the interview, S.S. related several episodes of violence witnessed with her biological father and his family. [Filing No. 75-36](). S.S. also stated that she never felt safe with Wendell Matthews. *Id.* S.S. was provided intermittent treatment and therapy at Lutheran Family Services until February 2013. [Filing No. 75-37](). A discharge/case closure form indicated the reason she was discharged in February 2013 was "drop Out/No contact," but that she had improved with treatment. [Filing No. 75-37]().

A psychological evaluation performed in August 2013 on a referral from S.S.'s outpatient counselor shows that S.S.'s mother had primary concerns about her daughter's aggression and anger, which had resulted in law enforcement involvement on four separate occasions in the preceding several months. [Filing No. 75-39](). S.S. reported auditory hallucinations. *Id.* She was diagnosed with Major Depressive Disorder, Severe, With Psychotic Features, Single Episode; Oppositional Defiant Disorder; Anxiety Disorder NOS; Provisional Enuresis, Diurnal; Encopresis, without constipation overflow; and Phonological Disorder. *Id.* She received "rule out" diagnoses of Disruptive Mood Dysregulation Disorder,

provisional; and Posttraumatic Stress Disorder. *Id.* at 6. The record shows S.S. was admitted on September 9, 2013 to Great Plains Regional Medical Center for suicidal ideation and psychosis with delusions. Filing No. 75-27.

Plaintiff also submits the expert witness report of Daniel Hally, who opines that "both Investigator McNeil and Lieutenant Richard Thompson completely fail to understand the difference between reasonable doubt and probable cause. This failure results in incomplete and unprofessional investigations as demonstrated in the investigation resulting in the wrongful arrest of Wendell Matthews." Filing No. 75-46. The defendants object to the expert's opinion, contending that it was not properly disclosed under Federal Rule of Civil Procedure 26. Filing No. 79, Reply Brief at 5-6. They urge the court not to consider the document. *Id.* The Court need not resolve this dispute because the court finds the expert's opinion relates to an issue of law and the court has not considered or relied upon the expert's opinion in making this determination.

In his motion for summary judgment, Matthews argues that S.S.'s statements were too unreliable to furnish the probable cause necessary for an arrest. He argues that the inconsistencies and apparent confabulation in S.S.'s interview and her references to abuse by several others made her statements inherently suspect and unreliable. He also contends that the affidavit submitted to the county judge was materially misleading in that it omitted the fact that the results of the SANE exam matched the earlier exam, which had not resulted in criminal charges.

Investigator McNeil and the City argue that uncontroverted evidence shows there was no constitutional violation.

II. LAW

9

A.   Standard of Review

In considering a motion for summary judgment based on qualified immunity, the court must view the evidence in the light most favorable to the plaintiff and must draw all reasonable inferences in his favor. *Malone v. Hinman*, 847 F.3d 949, 952 (8th Cir. 2017). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"'An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation.'" *Nader v. City of Papillion*, No. 18-1402, 2019 WL 1087783, *2 (8th Cir. Mar. 8, 2019) (quoting *Malone*, 847 F.3d at 952). Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were "nevertheless objectively reasonable in light of the clearly established law at the time of the events in question." *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Wilson v. Lawrence Cty.*, 260 F.3d 946, 951 (8th Cir. 2001) (holding that "there need not be a case decided on all fours with the present factual circumstances, rather, it need only be apparent from pre-existing law that the conduct is unlawful").

When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary

adjudication. *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment. *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008). The threshold question then is whether, viewed in the light most favorable to the plaintiff, the facts demonstrate that the defendant's conduct violated a constitutional right. *Id.*; *see also Turney v. Waterbury*, 375 F.3d 756, 759-760 (8th Cir. 2004) (stating "[w]hether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law," however, "if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment").

    B.    Fourth Amendment

The Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process. *Manuel v. City of Joliet*, —- U.S. ——, 137 S. Ct. 911, 920 (2017). The Constitution prohibits arrests that are not based on probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Fourth Amendment right of citizens not to be arrested without probable cause is clearly established. *Kuehl v. Burtis*, 173 F.3d 646, 649 (8th Cir. 1999).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Nader,* No. 18-1402, 2019 WL 1087783, *2 (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)); *see also Malley v. Briggs*, 475 U.S. 335, 341, 344 & n.7 (1986) (stating police officers sued under § 1983 "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that an arrest warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.").

"A detective has probable cause to arrest 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Nader*, No. 18-1402, 2019 WL 1087783, *2 (quoting *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). "'Arguable probable cause exists even whe[n] an officer mistakenly arrests a suspect believing [the arrest] is based on probable cause if the mistake is objectively reasonable.'" *Id.* (quoting *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017) (alteration in original)); *see also Borgman*, 646 F.3d at 523 (noting that an officer is shielded by qualified immunity if the mistake is objectively reasonable).

"Whether probable cause exists is a question of law to be 'determined at the moment the arrest is made, and any later developed facts are irrelevant to the . . . analysis.'" *Id.* (quoting *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016)). "A detective 'need not conduct a "mini-trial" before effectuating an arrest' and 'when assessing whether a suspect possessed the state of mind required for the crime . . . he need not rely on an explanation given by the suspect.'" *Id.* (quoting *Borgman*, 646 F.3d at 523–24 (citations omitted in original)). "However, a detective 'cannot avoid "minimal further investigation" if it would have exonerated the suspect.'" *Id.* (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). In determining whether a Fourth Amendment violation has occurred, "[c]ourts must not judge officers with the 20/20 vision of hindsight." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015).

Police officers may be liable for Fourth Amendment violations for unlawful pretrial detention when they have lied to or misled the prosecutors, failed to disclose exculpatory evidence, or unduly pressured the prosecutors to seek indictment. *See Hernandez-Cuevas*

12

*v. Taylor*, 723 F.3d 91, 100 (1st Cir. 2013); *see also Evans v. Chalmers*, 703 F.3d 636, 647-48 (4th Cir. 2012) (same); *Pierce v. Gilchrist*, 359 F.3d 1279, 1292 (10th Cir. 2004) ("[O]fficers who conceal and misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions.") (citation omitted); *Manuel,* 137 S. Ct. at 920 n.8 (Fourth Amendment claim was not expunged where indictment "was entirely based on false testimony").

    C.    Fourteenth Amendment – Substantive Due Process

The Eighth Circuit Court of Appeals recognized a substantive due process cause of action for reckless investigation in *Wilson v. Lawrence Cty.*, 260 F.3d at 957. The liberty interest at stake is the "interest in obtaining fair criminal proceedings." *Id.* at 956 n. 8. To establish the alleged due process violation, a plaintiff "must show that each individual defendant 'intentionally or recklessly failed to investigate, thereby shocking the conscience.'" *Johnson v. Moody,* 903 F.3d 766, 773 (8th Cir. 2018) (quoting *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009)); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The prohibitions against law enforcement officers conducting a conscience-shocking reckless investigation were clearly established at least as of 1989. *Dean v. Searcy*, 893 F.3d 504, 518 (8th Cir. 2018), *cert. denied*, No. 18-648, 2019 WL 1005858 (U.S. Mar. 4, 2019) (finding deputies "conducted a conscience-shocking reckless investigation . . . that was used to box" the plaintiffs in to entering guilty pleas).

"This is a question of law to which [the courts] apply a rigorous standard." *Johnson,* 903 F.3d at 773. Only in the rare situation when the state action is "'truly egregious and extraordinary' will a substantive due process claim arise." *Winslow v. Smith*, 696 F.3d 716,

13

736 (8th Cir. 2012)(quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)). "Substantive due process 'is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amount[s] to brutal and inhumane abuse of official power. . . .'" *Id.* (quoting *Golden ex rel. Balch v. Anders*, 324 F.3d 650, 652–53 (8th Cir. 2003)). Mere negligent failure to investigate, such as failing to follow up on additional leads, does not violate due process. *Id.* Similarly, allegations of gross negligence do not give rise to a constitutional violation. *Wilson*, 260 F.3d at 955. "'[T]he following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence.'" *Johnson*, 903 F.3d at 773 (quoting *Akins*, 588 F.3d at 1184).

The Eighth Circuit Court of Appeals construes its substantive due process case law narrowly and rejects the application of substantive due process analysis where the Fourth Amendment analysis could instead apply. *See Stewart v. Wagner*, 836 F.3d 978 (8th Cir. 2016) (holding that a "plaintiff's claim that he was arrested or prosecuted without probable cause . . . 'must be judged' under the Fourth Amendment, not substantive due process." *Id.* at 983 (quoting *Albright v. Oliver*, 510 U.S. 266, 270-71 (1994)). The Supreme Court states that "[i]f the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Manuel*, 137 S. Ct. at 919. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. *Id.* (noting the violation

14

"can happen when the police hold someone without any reason before the formal onset of a criminal proceeding" or "when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements").

D. Municipal Liability

A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. *Brockinton v. City of Sherwood,* 503 F.3d 667, 674 (8th Cir. 2007) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "'To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity.'" *Nader*, No. 18-1402, 2019 WL 1087783 at *3; *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Section 1983 liability for a constitutional violation may also attach to a municipality if the violation resulted from a deliberately indifferent failure to train or supervise. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690–91 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89 (1989). "However, 'there must be an unconstitutional act by a municipal employee' before a municipality can be held liable." *Nader*, No. 18-1402 Slip op. at 6 (quoting *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (citation omitted).

III. DISCUSSION

Because Matthews challenges his pretrial detention, the Fourth Amendment is likely the relevant constitutional provision. See *Manuel*, 137 S. Ct. at 918. Matthews was never convicted, so the Fourth Amendment does not drop out, and the Due Process Clause under the Fifth or Fourteenth Amendments is not applicable to his claims. See *Manuel,* at 137 S. Ct. at 920 n.8.

15

Nevertheless, to the extent that substantive due process remains applicable, the Court would find that the defendants are entitled to qualified immunity on any such claim. Although the plaintiff has submitted evidence from which a reasonable juror could find negligence, or even gross negligence—in that Investigator McNeil allegedly arrested Matthews on minimal investigation and in reliance on the statements of an arguably unreliable witness—the evidence does not show intentional or reckless conduct that rises to the level of conscience-shocking behavior. Any failure by Investigator McNeil to follow up, order records, examine psychiatric history, interview the doctor, or otherwise investigate further the earlier allegation is of no consequence to the determination of whether a constitutional violation occurred. Those alleged shortcomings amount only to negligence and do not point to intentional or reckless conduct. Nor has Matthews shown that Investigator McNeil knowingly submitted a materially misleading probable cause affidavit to the judge and/or the county attorney.

The plaintiff has produced no evidence suggesting that Investigator McNeil attempted to coerce or threaten him as the officers did to the *Wilson* plaintiff. See *Wilson*, 260 F.3d at 950. Nor is there evidence that Investigator McNeil purposely ignored evidence suggesting that Wendell Matthews was innocent. The facts, construed with all reasonable inferences in favor of Matthews, do not rise above the level of negligence so as to trigger constitutional due process protections.

It is uncontroverted that Matthews was subjected to a warrantless arrest. The question, therefore, is whether that arrest violated the Fourth Amendment. In arresting Matthews for the alleged abuse of S.S., Investigator McNeil relied on her statements in the Bridge of Hope interview, the information gleaned from her mother, and his knowledge that

16

the victim had made similar allegations, albeit with different, possibly underaged alleged perpetrators. Based on that information, Investigator McNeil had arguable probable cause to arrest Matthews.

The totality of the circumstances at the time of the arrest, as described above, were sufficient for Investigator McNeil to believe that Matthews had committed the offense of sexual abuse of a child. The Court cannot say that no reasonably competent officer could have concluded that an arrest warrant should issue based on these facts. Matthews, though he was not ultimately charged and tried, was not detained without reason. A ten-year old child disclosed to a mental-health professional that she had been sexually abused. She was interviewed by a person trained in such interviews, who concluded her allegations of sexual abuse two years earlier appeared to be credible. Also, as mental health professionals noted, the juvenile had exhibited behaviors that were consistent with having been abused. Further, S.S.'s diagnosed psychosis has not been determined to be severe enough to completely undercut her credibility. The juvenile victim's statements were detailed and relatively consistent. Her reported confabulations related to relatively minor details and were not critical to the evaluation of the veracity of the accusations against Matthews.

Matthews places undue reliance on the argument that further investigation of the victim's reputation for truth and veracity and further medical follow-up would have revealed either that S.S. had not been abused or had been abused by someone other than Matthews. But, even assuming Investigator McNeil had discovered those facts, probable cause would have still existed at the time of the arrest. The Court finds that it would be reasonable for a law enforcement officer, without medical training, to be troubled by the findings in the SANE exam.

The omission of details of the earlier examination did not make the affidavit of probable cause misleading. The information contained in the two SANE reports is not clearly exculpatory. Evidence of healed anal trauma is probative of an assault and generally consistent with the victim's account. Evidence showing that Matthews no longer lived with the victim and her mother is of no consequence because S.S.'s allegations referred to incidents taking place two years earlier. Similarly, the addition of omitted facts—McNeil's knowledge that the SANE nurse had recommended a follow-up examination and a second opinion, S.S.'s allegedly "fantastical" stories—would have made little difference to the probable cause analysis because those facts do not negate S.S.'s detailed description of the assault or her identification of Matthews as her alleged accuser. Similarly, the mention of other alleged "abusers" and/or sexual incidents refer to allegedly sexual or sexualized contacts with peers and not adults.

The Court finds there is no evidence that Investigator McNeil manufactured false evidence by affirmatively misrepresenting the findings of the SANE examination in his affidavit of probable cause. The affidavit detailed the results of his investigation and furnished enough details to enable the judge to find an arrest warrant was justified. Nor does the Court find evidence of systematic pressure by McNeil to implicate Matthews in the face of compelling contrary evidence. Though the evidence implicating Matthews may not be strong, there is no indication that McNeil consciously suppressed any potentially exculpatory evidence.

Contrary to the plaintiff's contentions, McNeil's level of awareness of the victim's mental health issues would not necessarily detract from the objective reasonableness of his reliance on her account of the assault. The purported omission of facts of the earlier exam

is of little consequence to the issue of whether the investigator had arguable probable cause and articulated it to the judge. The alleged lack of a finding of vaginal trauma or of "severe" anal trauma is not necessarily exculpatory—the medical findings are not inconsistent with S.S.'s reports and a sexual assault does not require penetration. Mental health professionals and school officials had suggested that S.S.'s behavior from 2012 to 2014 was consistent with abuse. For that reason, mandated disclosures were made to law enforcement. The fact that evidence of abuse was not found in the earlier inquiries or investigations does not mean the late 2013 allegations should not have been taken seriously or pursued. Further, S.S.'s statements were corroborated to some extent by her mother's acknowledgment that she played in a pool league, which matched the daughter's statements.

The Court finds that the evidence, viewed in the light most favorable to the plaintiff, does not establish the violation of a constitutional right. The Court has reviewed the parties' voluminous submissions and finds that the evidence does not show any genuine issues of material fact on whether the officer is entitled to qualified immunity for his conduct. The evidence relied on by Investigator McNeil furnishes probable cause for the arrest of plaintiff Wendell Matthews. Further, the plaintiff has not shown that Investigator McNeil made false statements in his affidavit of probable cause.

The plaintiff has not shown any failure to train, or any widespread policy or custom of arresting subjects is based on unreliable statements of allegedly unstable juvenile victims, so as to implicate the City's conduct. Investigator McNeil's supervisor's conduct has not been shown to be deficient. Thus, because the Court finds that no City employee committed an unconstitutional act, municipal liability cannot attach to the City of North Platte.

IT IS ORDERED:

1. The defendants' motion for summary judgment is granted.

2. A judgment of dismissal will issue this date.

Dated this 21st day of March, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge